## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| Tyrone Neal, II, individually and as Personal Representative of the Estate of Tyrone Neal, | ) ) ) ) | Civil Action No.:  2:23-cv-03850-RMG |
| Plaintiff, | ) ) | |
| v. | ) ) | **COMPLAINT** (***Jury trial demanded***) |
| PACCAR, Inc., | ) ) | |
| Defendant. | ) ) | |

Plaintiff Tyrone Neal, II, individually and as personal representative of the estate of Tyrone Neal, alleges as follows:

### PARTIES AND JURISDICTION

1.     Plaintiff Tyrone Neal, II, is the duly appointed personal representative of the estate of Tyrone Neal.

2.     Plaintiff Tyrone Neal, II, is decedent Tyrone Neal's son.

3.     Plaintiff is a citizen and resident of the state of South Carolina.

4.     The decedent, Tyrone Neal, was a citizen and resident of Orangeburg County, South Carolina, before his untimely death.

5.     Defendant PACCAR, Inc., is a foreign corporation, incorporated in the State of Delaware with its principal place of business in the state of Washington.

1

6.     Peterbilt Motor Company, Inc., is a division of PACCAR and the manufacturer of the Subject Truck.

7.     Defendant PACCAR is authorized to do business in South Carolina and can be served with process via its registered agent Corporation Service Company at 508 Meeting Street, West Columbia, South Carolina 29169.

8.     Defendant PACCAR is engaged in the business of designing, manufacturing, testing, marketing, promoting, distributing, and/or selling trucks and other products, or otherwise placing trucks and other products into the stream of commerce, including the truck that is the subject of this action.

9.     Defendant PACCAR has minimum contacts with South Carolina, and / or sold the subject truck with the understanding it would be used in South Carolina by a South Carolina company.

10.     Defendant PACCAR, Inc., has purposefully availed itself of the privilege of conducting business activities within the State of South Carolina by placing products, including the subject truck at issue in this matter, into the stream of commerce and by marketing their products and selling their products within the state of South Carolina.

11.     Defendant PACCAR, Inc., does reasonably expect, or should reasonably expect, that its business activities could or would have consequences within the state of South Carolina thereby subjecting it to this Court's jurisdiction.

12.    Defendant PACCAR, Inc., has established continuous and systematic contacts with the state of South Carolina sufficient for the exercise of personal jurisdiction over it by this Court, the exercise of which will not offend traditional notions of fair play and substantial justice, and is consistent with the constitutional requirements of due process.

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff and Defendant.

14.    The amount in controversy in this matter exceeds $75,000.00, satisfying the jurisdictional requirement contained in 28 U.S.C. § 1332(a).

15.    Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL ALLEGATIONS

### A. The subject crash

16.    On November 23, 2020, at or around 5:00 AM, Tyrone Neal was killed while a passenger in the subject truck.

17.    The subject truck is a 2015 Peterbilt 365 truck, VIN#: 1NPSCHEX0FD274799, which was designed and manufactured by Defendant PACCAR at its manufacturing facility in Denton, Texas.

18.    During the subject crash, the subject truck's brakes malfunctioned, forcing the operator to make a left-hand turn at the T-intersection of S.C. Highway

3

27 and U.S. Highway 78 in Ridgeville, South Carolina without the benefit of slowing the vehicle to a safe speed to execute the turn.

19.    During the turn, the subject truck rolled over and the roof of the truck over the passenger side failed catastrophically and, as a result, Tyrone Neal suffered a fatal injury.

20.    The subject truck was owned by the Decedent's employer, Randolph Trucking, LLC, and was primarily used for hauling salt.

21.    The subject truck included a brake system that used a Bendix E-6 Dual Circuit Foot Brake Valve, a floor-mounted, treadle operated assembly.

22.    On the day of the crash, Tyrone Neal was a passenger in the subject truck and another Randolph Trucking, LLC employee, Samuel Boyd, was operating the subject truck.

23.    Tyrone Neal was properly seated and belted in the passenger seat of the subject truck when it left the Randolph Trucking facility in Ridgeville, South Carolina.

24.    When approaching the T-intersection, Mr. Boyd attempted to slow the subject truck when the brake system malfunctioned.

25.    Specifically, the treadle pedal became stuck and could not engage the air brake system.

4

26.    Despite the brakes passing inspection prior to leaving the job site, Mr. Boyd lost the ability to brake, forced to turn left at an unsafe speed, and the subject truck tipped over.

27.    The truck engaged in a passenger side leading roll during which the roof of the subject truck over the passenger side failed catastrophically, driving Mr. Neal's head into his chest and killing him.

**B.  The subject truck**

28.    At the time of the crash, the subject truck was in a defective condition and unreasonably dangerous as evidenced by both the failure of its braking system and the collapse of the roof and overall cab structure which unreasonably intruded into the occupant survival space of the subject truck.

29.    The subject truck had a structurally inadequate cab design because the cab was unreasonably vulnerable to roof collapse during a rollover event even where the load on this roof is relatively small.

30.    The primary structural elements of the subject truck's cab are a pair of thin, narrow aluminum extrusions bent at specific locations such that they ultimately form the perimeter of the door opening.

31.    The door perimeter frame is required to perform the function of the A post, A pillar, the side header, the B pillar, the B post, and the roof panel.

32.    The majority of the cab structure is made of thin aluminum sheet metal which is riveted to the door's perimeter frame creating a sort of cladding which forms the majority of the shape of the subject truck's cab.

33.    The cab's construction relies primarily on a pair of thin, narrow, continuous aluminum extrusions which bend at each corner.

34.    This results in the cab having an unreasonably dangerous inability to maintain its geometry in foreseeable rollovers.

35.    The subject cab rolled over onto the passenger side, and as it continued to move forward, the cab interacted with the ground, and pushed the A-pillar downward and buckled the roof rail to allow the entire structure to intrude into Tyrone Neal's occupant space.

36.    At the time the subject truck was sold, PACCAR had not conducted testing to determine the strength of the subject truck's cab and roof structures in rollover conditions.

37.    At the time the subject truck was sold, the design of the brake system was also defective and unreasonably dangerous for the foreseeable use to which the truck was expected to be put as a dump truck.

38.    The Model 365 is represented as having been designed to withstand the rigors of the concrete industry, construction sites, and practically any vocational application one can name.

6

39.     The subject brake system used a floor-mounted Bendix E-6 Dual Brake Valve treadle pedal assembly manufactured by Bendix Corporation.

40.     In this configuration, the components for the mounting plate are located above the floorboard, with the remaining parts beneath the floorboard:



41.     The components above the floorboard – the top brake plate, the plunger, the plate-mount, and the foot valve – are exposed to elements like water, dirt, salt, and other contaminants that often pool on the floor of a truck used in industrial applications.

42.     Under the treadle pedal there is roller that sits on top of a plunger in the mounting plate that depresses the spring in the foot valve.

43.    The plunger in the subject truck was heavily corroded causing it to stick in the mounting plate and preventing it from exerting force on the spring seat, graduating spring, and primary piston making the brakes inoperable.

44.    These floor-mounted brake valves, like the one in the subject truck, are unreasonably susceptible to dirt and debris contamination in the manner and environment for which the Model 365 is designed.[1]

45.    Defendant PACCAR reasonably expects Model 365s, like the subject truck, to be used in industrial applications such as dump trucks and concrete trucks.

46.    Nonetheless, Defendant PACCAR installed the floor-mounted treadle assembly in the subject truck as opposed to a firewall-mounted brake assembly.

47.    At all times, Mr. Boyd was operating the subject truck in a reasonably foreseeable manner.

48.    At all times, neither Mr. Boyd, Mr. Neal, or their employer possessed facts or information sufficient to apprise them of the unreasonable risk of harm posed by either the defective condition of the subject truck's roof structure or brake system.

---

[1]    Preventative maintenance guidelines by Bendix acknowledges the awareness that its floor mounted brake valves are susceptible to accumulated dirt, gravel, or foreign materials at the heel of the treadle, the plunger boot, and mounting plate. *See* https://n0c357rmy1njbuit2friqwu.blob.core.windows.net/documents/QIYhwtZHI0EBhB_SD-03-817_1_US_007001.pdf  (last visited May 4, 2023).

49.     The crash which forms the basis of this complaint was a real-world crash event that was reasonably foreseeable to Defendant PACCAR during the design and manufacturing process of the subject truck.

50.     The defects with the subject truck's braking system were the direct and proximate cause of the subject truck's braking system's failure and, ultimately, the crash.

51.     The defects in the subject truck's roof and body structure were the direct and proximate cause of Mr. Neal's enhanced injuries in this crash and, ultimately, his death.

52.     Plaintiff asserts a number of claims for relief against Defendant PACCAR for the decedent's pain and suffering prior to death as well as wrongful death damages for the decedent's statutory beneficiaries as permitted by S.C. Code §§ 15-5-90, 15-51-10, et seq.

## CAUSES OF ACTION

**First:**          **Strict liability: design and warnings defects**

53.     Plaintiff incorporates all prior paragraphs.

54.     At all times, Defendant PACCAR was a "seller" of the subject truck as that term is defined by S.C. Code § 15-73-10 et seq.

55.    At the time of the sale of the subject truck, the subject truck was defective in its design and unreasonably dangerous for its intended and foreseeable uses.

56.    At no time prior to the subject crash was the truck altered or modified in any way.

57.    At the time of the crash, the subject truck was without substantial change in the condition in which it was sold outside normal and expected wear from its foreseeable use.

58.    At the time of the crash, the subject truck was defective in that it incorporated the floor-mounted treadle pedal assembly into a Model 365 – a model truck designed, sold, and marketed by PACCAR for use in industrial applications including dump and concrete trucks.

59.    At the time of the subject truck's design and manufacture, safer alternative designs were existing and available that would have reduced the risk of brake failure experienced by the subject truck.

60.    While not exhaustive of the feasible, alternative designs available to Defendant PACCAR, the following alternative designs could have eliminated the risk of harm and brake failure associated with the subject truck's brake assembly:

    a.   Firewall-mounted brake assembly which were readily available in the market place (and from the same manufacturer) at the time of the design and manufacture of the subject truck;

    b.   A more robust plunger boot and / or mounting plate to more adequately protect the plunger and its mount from corrosion over time; and

    c.   any other alternative design revealed by discovery.

61.    None of the above-described designs would negatively affect the utility, functionality, or operation of the entire vehicle.

62.    In fact, Defendant PACCAR incorporates similar firewall-mounted brake designs in other model cabs, including firewall-mounted brakes manufactured by Bendix.

63.    The defective design of the subject truck by its incorporation of the floor-mounted brake system rendered it unreasonably dangerous for the use for which it was sold and was the direct and proximate cause of the subject crash.

64.    The subject truck was also unreasonably dangerous and not crashworthy in real-world, foreseeable rollover crashes due to the defective design of the roof / cab structure.

65.    At the time of the subject truck's design and manufacture, safer alternative designs were existing and available that would have reduced the risk of

excessive roof crush or cab intrusion into the occupant survival space of the subject truck.

66.     There exist various designs that could have been used to improve the cab and roof strength on the subject truck, including:

>   a.      using closed structural sections in place of weak, thin, narrow extrusions;
>
>   b.      increasing metal gauge;
>
>   c.      replacing lower strength materials with higher strength materials;
>
>   d.      increasing section size;
>
>   e.      improving component integration;
>
>   f.      integrating internal and external reinforcements, such as corner reinforcements which would dramatically stiffen the cab's structure; and
>
>   g.      any other alternative designs utilized by Defendant PACCAR or its competitors in similar truck models as may be revealed by discovery.

67.     These design alternatives were technologically and economically feasible at the time of the design and manufacture of the subject vehicle.

68.     None of the above-described roof and cab structural strength improvements would negatively affect the utility, functionality, commercial desirability, or operation of the entire vehicle.

69.    These improvements would only make the roof and cab safer in foreseeable crashes with little additional cost to Defendant PACCAR or its customers.

70.    At the time the subject truck was designed and manufactured, Defendant PACCAR had not conducted testing to determine the strength of the subject truck's cab and roof structures in real-world rollover conditions.

71.    At the time the subject truck was sold, Defendant PACCAR had not conducted computer simulations or finite element analyses to determine the subject truck's cab and roof structures' strength or performance during rollover conditions.

72.    These actions resulted in the subject truck's inadequate structural support which resulted in excessive roof and cab deformation under relatively minor roof loads during the subject wreck.

73.    This excessive deformation resulted in significant loss of Tyrone Neal's survival space which ultimately caused the roof structure to crush his head down into his chest, causing him serious injury and death.

74.    At no time prior to Mr. Neal's death did Defendant PACCAR provide a conspicuous or adequate warning to Mr. Neal, Mr. Boyd, or their employer regarding the subject truck's brake system's susceptibility to corrosion or to the ultimate consequences of that corrosion, namely total brake inoperability.

75.    At no time prior to Mr. Neal's death did Defendant PACCAR provide a conspicuous or adequate warning to Mr. Neal, Mr. Boyd, or their employer regarding the inability of the roof / cab structure to withstand relatively minor loads in foreseeable rollover crashes to maintain the integrity of the occupant survival space in the subject truck.

76.    Neither of these unreasonably dangerous characteristics of the subject truck were open, obvious, or known to the users.

77.    These warning defects also directly and proximately caused Mr. Neal's injuries as he continued to make normal use of the subject truck without sufficient warning regarding these defects and that use ultimately caused him injury and death.

**Second:     Negligence / Gross Negligence: design and warnings defects**

78.    Plaintiff incorporates all prior paragraphs.

79.    At all relevant times, Defendant PACCAR was responsible for the design, testing, inspection, part selection, assembly, equipping, marketing, distribution, and sale of the subject truck.

80.    These responsibilities specifically include the selection and incorporation of the brake assembly in the subject truck and the design and manufacture of the subject roof and cab structure.

81.    At all times, Defendant PACCAR owed a duty to Mr. Neal and any other purchaser or user of the subject truck of reasonable care in the design, testing,

14

inspection, part selection, assembly, equipping, marketing, distribution, and sale of the subject truck.

82.    Defendant PACCAR was negligent, grossly negligent, willful, wanton, reckless, and / or careless in the design, testing, inspection, part selection, assembly, equipping, marketing, distribution, and sale of the subject truck and breached the duties owed Mr. Neal by the following acts:

a.  Failure to adopt and implement adequate safety hierarchy procedures and policies;

b.  Failing to design, manufacture, test, assemble and/or install the subject truck's brake system so as to prevent the floor-mounted treadle brake's plunger from being exposed to environmental contaminants, hastening the corrosion and ultimate sticking and failure of the plunger and the brakes, under circumstances where it knew or should have known of the hazard;

c.  Failing to design, manufacture, test, assemble and/or install roof and cab structure that was adequate to withstand relatively minor loads in a foreseeable rollover crash and to protect the truck's occupants' survival space;

d.  Failure to ensure that the subject truck was reasonably crashworthy;

e.  Failure to exercise reasonable care in the design of the subject vehicle's roof and cab structure;

f.  Failure to exercise reasonable care in the selection and implementation of a floor-mounted brake assembly in the subject truck which was expected and known to be used as a dump truck;

g.  Failure to exercise reasonable care in the testing of the subject truck and its brake assembly and / or its roof / cab structure;

h.  Failure to adopt and implement conspicuous and adequate warnings regarding the subject truck to include the braking systems susceptibility to corrosion and sticking due to environmental exposures and the roof / cab structures lack of crashworthiness in foreseeable rollover events;

i.  Failure to adopt feasible alternative designs with respect to the subject truck and its braking system and its roof / cab structure; and

j.  Any other negligent, grossly negligent, reckless, willful, wanton, or careless act revealed during the course of discovery.

83.  As a direct and proximate result of these acts, Plaintiff's decedent suffered serious and painful injuries that resulted in his death for which his estate and his statutory beneficiaries are entitled to recover.

**Third:    Breach of implied warranty**

84.  Plaintiff incorporates all prior paragraphs.

16

85.    Defendant PACCAR impliedly warranted to the purchaser and foreseeable users of the subject truck, that the subject truck was merchantable, was fit for the ordinary purpose for which such goods are sold and used, and was fit for the particular use for which Randolph Trucking, LLC purchased it, i.e. operation as a dump truck.

86.    The purchaser and foreseeable users of the subject truck made ordinary use of the subject truck and, contrary to the implied warranties given, the subject truck was defective, unreasonably dangerous, and unfit for its ordinary and foreseeable use, as well as for the particular use for which it was sold.

87.    As such, Defendant PACCAR breached the implied warranties given with the subject truck and, as a direct and proximate result, Plaintiff's decedent suffered serious injury and death causing his estate and his statutory beneficiaries damages for which they are entitled to recover.

## JURY DEMAND

88.    Plaintiff demands a trial by jury on all claims so triable.

## REQUEST FOR RELIEF

89.    Plaintiff incorporates all prior paragraphs.

90.    Plaintiff asks for judgment against Defendant as follows:

   a.  actual damages including incurred medical costs, loss of past and future earnings, funeral expenses, and any other pecuniary loss to Plaintiff, the estate, or the statutory beneficiaries proven at trial and permitted by law;

b.  compensatory damages including conscious physical pain and suffering prior to death; those damages recoverable by the statutory beneficiaries under S.C. Code § 15-51-10, et seq. for loss of services, consortium, companionship, grief, sorrow, and other wrongful death damages; and any other compensatory damages proven at trial and permitted by law;

c.  for all recoverable costs of court;

d.  for punitive damages as determined by the trier of fact should discovery reveal a defendant has engaged in conduct recklessly, willfully, wantonly, or with conscious disregard of plaintiff's decedent's rights; and

e.  for such other relief as the trier of fact deems just and proper.

Respectfully submitted,                    **RICHARDSON THOMAS, LLC**

                                 BY:    *s/Chris Moore*
                                        Chris Moore (FBN: 10445)
                                        383 W. Cheves Street
                                        Florence, South Carolina 29501
                                        chris@richardsonthomas.com
                                        C: 803.300.1517

                                        Grace Babcock (FBN: 13880)
                                        1513 Hampton Street, First Floor
                                        Columbia, South Carolina 29201
                                        grace@richardsonthomas.com
                                        T: (803) 281-8150

August 4, 2023                          Attorneys for plaintiff

18